**SIGNED THIS: January 20, 2022**

_____
**Mary P. Gorman
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.     20-90855 |
| KATHLEEN LINE, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ————————————— | ) | |
| | ) | |
| JORDAN LEE, ZOE LEE, and | ) | |
| CAMDEN LEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No.     21-09002 |
| | ) | |
| KATHLEEN LINE, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court is a motion for summary judgment filed by the Plaintiffs

seeking judgment that a debt owed to them by the Debtor should be excepted

from her discharge. Because there are no material issues of fact in dispute and

the Plaintiffs have established their entitlement to a judgment in their favor as a matter of law, the motion for summary judgment will be granted. The $190,000 debt plus prejudgment interest and costs owed by the Debtor to the Plaintiffs will be excepted from the Debtor's discharge.

## I.    Factual and Procedural Background

Kathleen Line ("Debtor") filed her voluntary petition under Chapter 7 on October 20, 2020. On her schedules, she listed Camden Lee, Zoe Lee, and Jordan Lee as unsecured creditors to whom she owed $285,383 by reason of the entry of a civil judgment. In her Statement of Financial Affairs, the Debtor disclosed involvement in litigation related to the probate estate of Sandra Kay Lee pending in the circuit court of Kankakee County, Illinois. She also disclosed that, in the several weeks before filing, funds in her bank accounts at Midland States Bank and Municipal Trust and Savings Bank had been garnished by Camden Lee, Zoe Lee, and Jordan Lee.

Jordan Lee, Zoe Lee, and Camden Lee ("Plaintiffs") timely filed their complaint to determine dischargeability of the debt owed to them. In their complaint, the Plaintiffs alleged that they are the surviving children of Sandra Lee who died in 2005. Prior to her death, Sandra Lee executed a will that included a testamentary trust for the benefit of her children; the Debtor was named as the trustee of the Sandra K. Lee Trust ("Trust"). The Plaintiffs further alleged that, in her capacity as trustee, the Debtor received $190,000 from the executor of Sandra Lee's estate and that the Debtor deposited the $190,000

into her personal bank accounts, thereby commingling the Trust funds with her own funds. The Debtor also allegedly received Social Security benefits for the Plaintiffs for a number of years. According to the Plaintiffs, the Debtor has never accounted for any of the funds that she received as trustee or as representative payee for the Social Security benefits.

Sometime in 2014, the Plaintiffs apparently filed a petition in their mother's probate estate seeking an accounting from the Debtor of the funds that she had received on their behalf.[1] On September 14, 2014, the state court entered an order requiring the Debtor to provide an accounting of "all financial matters in [her] control" by October 23, 2014. The Debtor apparently likewise petitioned the state court to require the executor of the Sandra Lee estate, Jennifer Mansberger, to file an accounting of all funds collected by the estate. The executor was also ordered to file an accounting by October 23, 2014.

According to the Plaintiffs, the Debtor never filed an accounting but did file a report saying that she had spent $180,000 of the Trust funds on a new house and for the purchase of a vehicle. The Plaintiffs further alleged that, on September 24, 2015, the state court found the Debtor in contempt for her failure to comply with the order requiring her to provide an accounting. Later, after further hearing, the Debtor was removed as trustee of the Trust. The Debtor appealed. The Appellate Court of Illinois, Third District, subsequently affirmed the Debtor's duty to account to the Plaintiffs and her removal as

---

[1] The probate case is In re Estate of Sandra K. Lee filed in the Twenty-First Judicial Circuit of Kankakee County, Illinois, under case #2005-P-51.

trustee but reversed the contempt finding due to procedural errors. *See In re Estate of Lee*, 2017 IL App (3d) 150651.

The complaint asserted that, after remand and further proceedings, the state court entered a final order on February 26, 2020. That order, a copy of which was attached to the complaint, included specific findings that the Debtor had failed to provide "any adequate accounting of the monies" she received, that she commingled Trust funds by placing the funds "in her and her husband's bank accounts," and that she "illegally converted . . . the funds of the trust and used said funds improperly for her own benefit." After making the findings, the circuit court entered judgement in favor of the Plaintiffs and against the Debtor for $190,000 plus prejudgment interest and court costs.

In their prayer for relief, the Plaintiffs asked that all of their claims against the Debtor for breach of fiduciary duty—both those described in the complaint and "any and all other breaches"—be excepted from her discharge. They also asked that the Debtor be ordered to account for the funds she received from the Trust.

The Debtor answered the complaint by admitting many of the allegations made therein. She denied, however, that she had failed and refused to account for the funds she received as trustee and denied that she had continued to fail to account to the Plaintiffs. She also denied that she had been found to have converted the assets of the Trust. The Debtor denied that her conduct constituted defalcation as a fiduciary.

The Plaintiffs have now filed their motion for summary judgment. In the motion, they again allege that the Debtor was named as the trustee of the Trust after the death of Sandra Lee; a copy of the will creating the Trust was attached as an exhibit. They also again allege that the Debtor received $190,000 from the executor of the estate of Sandra Lee and that the Debtor deposited that money into her own personal accounts, thereby commingling the funds with her own assets and treating the funds as her own. The Plaintiffs complain that the Debtor never accounted to them for the use of the Trust funds and failed to comply with the terms of the state court order entered on September 14, 2014, requiring her to account for all funds she received on their behalf. They say that the Debtor filed a document with the state court wherein she admitted to using the funds for the purchase of a new home and vehicle, but the state court found the document to be legally insufficient to constitute an accounting. The Debtor was held in contempt for her failure to account.

In their motion for summary judgment, the Plaintiffs further allege that, after the Debtor appealed the state court order finding her in contempt, the Illinois appellate court affirmed the trial court's findings that the Debtor was required to account to the Plaintiffs and that she was properly removed as trustee due to her failure to do so. The appellate court reversed the finding of contempt due to procedural errors. After remand, a final judgment was entered on February 26, 2020, in favor of the Plaintiffs and against the Debtor for $190,000 plus prejudgment interest and court costs; that judgment was not appealed by the Debtor. The judgment was based on specific findings that the

Debtor had failed to provide a proper accounting, had commingled the Trust funds by placing them in her own bank accounts, and had illegally converted the funds and used them for her own purposes. Copies of all relevant state court orders and transcripts from several of the hearings were included as exhibits with the motion for summary judgment.

The final judgment order also specifically adopted the findings made by the state court when it orally announced its decision on January 23, 2020. The transcript of that hearing discloses that the state court had specifically reviewed and considered the testimony of the Debtor at several hearings during which she attempted to justify her expenditure of the Trust funds. The state court found that the Debtor's total lack of records, bank statements, or other paperwork to support her claimed expenditures evidenced that she had violated her duties to the Plaintiffs. The court found that she had not presented "a single verifiable" expense and that the claimed expenses she listed were either "guesses or estimates." The state court criticized the Debtor for her attempt to use United States Department of Agriculture ("USDA") guidelines related to the average cost of raising a child as a basis for claiming that the funds had been properly spent; the court found that such efforts were "without merit." Likewise, the state court found some of the Debtor's claimed expenses, such as repairs to Jordan Lee's truck and tuition for Zoe Lee, to be duplicates of expenses actually paid by the executor as shown on the executor's accounting; the Debtor's lack of receipts or canceled checks for the expenditures resulted in all doubts being resolved against the Debtor. The

Plaintiffs argue that, based on the principles of collateral estoppel, the state court record is sufficient to support the entry of summary judgment in their favor.

The Debtor responded to the motion for summary judgment by admitting most of the facts set forth by the Plaintiffs. She quibbles with their assertion that she "ignored" the state court order to account; the state court judge did not use that term. She also says that she admitted to using $108,000 of the Trust funds to pay mortgage interest on a home she purchased rather than the $180,000 the Plaintiffs claimed that she used to buy the house. She quotes the state court judge as saying that it was "difficult to say what money was spent on the new house." In her response, the Debtor lists additional facts consisting largely of parts of her testimony before the state court wherein she insisted that, although she had limited or no records of her expenditures, she recalled several specific expenditures she had made for each of the Plaintiffs over the years. She also claimed to have met the needs of the Plaintiffs over the years they lived with her and believed that she had provided them with a good life. And she quotes the state court judge as saying that, while it was "certainly likely true" that she had spent some of the Trust funds for the benefit of the Plaintiffs, the amount could not be ascertained without an accounting. The Debtor argues that the state court record is ambiguous and inadequate to support the entry of summary judgment in favor of the Plaintiffs. To the contrary, the Debtor asserts that summary judgment should be entered in her favor.

The motion for summary judgment has been fully briefed and is ready for decision.

## II.      Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The determination of the dischargeability of a particular debt is a core proceeding. 28 U.S.C. §157(b)(2)(I). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.      Legal Analysis

### A. *Summary Judgment Standard*

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which is applicable in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R. Civ. P. 56; Fed R. Bankr. P. 7056. Summary judgment is an encouraged method for resolving cases and should be granted when there are no genuine disputes as to any material facts and a party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 327 (1986). A party moving for summary judgment has the burden of establishing that there are no material

facts in dispute. *Id.* at 323. The movant must also establish that controlling substantive law supports a result in its favor. *See ANR Advance Transp. Co. v. Int'l Brotherhood of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). Strict compliance with the local rules regarding summary judgment motions is required. CDIL LR 7.1(D).

### B. Collateral Estoppel

In their motion for summary judgment, the Plaintiffs rely heavily on the collateral estoppel effect of the state court orders to support their request for relief. The principles of collateral estoppel require that "[f]ederal courts must give state court judgments the same preclusive effect as a court in the rendering state, applying that state's law." *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (quoting *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002)). The doctrine of collateral estoppel bars relitigation of an issue if certain requirements are met under the laws of the state in which the judgment was entered. *VanDettum v. Wease (In re Wease)*, 2016 WL 8078316, at *4 (Bankr. C.D. Ill. Nov. 28, 2016). "Under Illinois law, collateral estoppel requires that (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Gambino*, 757 F.3d at 608 (citation omitted) (internal quotation marks omitted). "[T]he party sought to be bound must actually have litigated the issue in the first suit and a decision on the

issue must have been necessary to the judgment in the first litigation." *Id.*
(citation omitted) (internal quotation marks omitted).

Collateral estoppel may apply in nondischargeability proceedings. *Grogan
v. Garner*, 498 U.S. 279, 284 n.11 (1991). Accordingly, "if a court of competent
jurisdiction has previously entered judgment against the debtor," collateral
estoppel may bar the debtor from relitigating "the underlying facts in the
bankruptcy court." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). But
"[t]he party asserting collateral estoppel has the burden of showing 'with clarity
and certainty the precise issues' to which it applies." *Wease*, 2016 WL
8078316, at *4 (citation omitted). Detailed findings of fact from the earlier
proceeding are necessary for a bankruptcy court to determine what issues were
actually decided and what findings were essential to the other court's
judgment. *Id.* at *5. The Debtor does not dispute that she actively participated
in the state court case or that the final state court order was a judgment on the
merits. The Debtor admits in her response that the principles of collateral
estoppel may be applied here; she disputes only that the findings of the state
court are adequate to support the Plaintiffs' request for summary judgment.

## C. Defalcation as a Fiduciary

Section 523(a)(4) excepts from discharge debts incurred by "fraud or
defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. §523(a)(4). The
Plaintiffs claim that the debt owed to them should be excepted from the
Debtor's discharge by reason of her defalcation while serving as trustee of the

Trust. To prevail, the Plaintiffs must prove the existence of a debt created while the Debtor was acting as a fiduciary and that the debt was caused by defalcation. *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 924-25 (7th Cir. 2016) (citations omitted). Establishing defalcation requires proof of "a culpable state of mind . . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013). Each element of the cause of action must be examined to determine whether the state court record supports the entry of summary judgment on that element.

### 1. The Existence of a Debt

The Plaintiffs allege that the Debtor owes them $190,000 plus prejudgment interest and costs, all of which was included in the final state court judgment. The Debtor admits in her response to the motion for summary judgment that this allegation is uncontested. The Debtor's admission would seem to end the inquiry, but the Plaintiffs included a request for more in their complaint. They asked that debts arising not only from the Debtor's conduct that supported the state court judgment but also from "any and all other breaches" be excepted from the Debtor's discharge. Although the request was not repeated in the motion for summary judgment, a brief discussion of the matter is warranted.

Section 523(a) identifies the types of debts that may be excepted from a debtor's discharge. 11 U.S.C. §523(a). A debt is a "liability on a claim." 11

U.S.C. §101(12). When no debt is owed because no liability on a claim has been established, there is no debt that can be found to be nondischargeable. *Premier Network Solutions, Inc. v. McCarty (In re McCarty)*, 2019 WL 2552170, at *13 (Bankr. C.D. Ill. June 20, 2019). Thus, the first step in any dischargeability proceeding is to establish whether a debt exists. *Stanbrough v. Valle (In re Valle),* 469 B.R. 35, 43 (Bankr. D. Idaho 2012). Bankruptcy courts have authority to determine the existence of a debt and to liquidate the amount of such debt as part of a dischargeability proceeding. *Dragisic v. Boricich (In re Boricich),* 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011). The problem here is that the Plaintiffs have not even attempted to identify any debt owed to them by the Debtor other than the $190,000 judgment. Their request that the finding of nondischargeability extend to "any and all other breaches"—even though such other breaches and any debts that might arise from them are not identified— cannot be given meaningful consideration.

There are mentions in the record of the fact that the Debtor received not only the Trust funds for the benefit of the Plaintiffs but also Social Security benefits for the Plaintiffs while they were minors. The Illinois appellate court opinion says that the Debtor admitted in one of her filings that she had received a total of approximately $158,000 from Social Security for the Plaintiffs. *Estate of Lee*, 2017 IL App (3d) 150651, ¶10. As legal guardian, the Debtor had apparently been named representative payee for the children's benefits and, as such, had a duty to use the benefits only for the Plaintiffs' needs. *Washington State Dept. of Social and Health Services v. Guardianship*

*Estate of Keffeler*, 537 U.S. 371, 376 (2003) (citing 20 C.F.R. §§404.2035(a), 416.635(a)); *see also* 20 C.F.R. §404.2021(c)(1). And as representative payee, the Debtor also had a duty to keep the Plaintiffs' benefits separate from her own funds and should have maintained records of her use of the benefit payments for which she was accountable. *Id.* at 377 (citing 42 U.S.C. §§405(j)(3)(D), 1383(a)(2)(C)(iv)); *see also* 20 C.F.R. §§404.2035(b), 404.2065. Despite her duties as representative payee, the Debtor did not account for the use of the Social Security benefits when ordered by the state court to account for all financial matters in her control. A full discussion of the Plaintiffs' rights based on the Debtor's alleged misuse and failure to account for the Social Security benefits is beyond the scope of this Opinion. Because the Plaintiffs have not pursued any of those rights, they have not established the existence of an additional debt owed to them by the Debtor related to the Social Security benefits. In the absence of the existence of such debt, no analysis can be made regarding the potential dischargeability of such debt. *McCarty*, 2019 WL 2552170, at *13.

The debt that is identified and that supports the cause of action pleaded in the complaint is the debt evidenced by the final state court judgment. The principles of collateral estoppel bind this Court to respect that judgment; the Debtor fully and actively participated in the litigation wherein the amount owed by the Debtor to the Plaintiffs was necessarily and finally litigated. Relief must be limited to a determination of the dischargeability of the debt evidenced by the state court judgment.

### 2. *Acting in a Fiduciary Capacity*

The Plaintiffs must also prove that the debt to be excepted from discharge arose while the Debtor was acting as a fiduciary. *Jahrling*, 816 F.3d at 925. That issue is also not contested here. The Debtor admits that she was the trustee of the Trust expressly created by the will of Sandra Lee. Whenever a debtor "is a trustee and the creditor a beneficiary of [a] trust, the balance has been deemed to incline against discharge." *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994). This occurs because "[i]n a trust relationship the settlor and beneficiary repose 'trust' in a literal sense in the trustee, and the abuse of that trust is considered a serious wrong." *Id.* The Debtor was acting in a fiduciary capacity when the debt evidenced by the state court judgment arose. The state court record is clear on this point, and the matter may not be relitigated or reconsidered here.

### 3. *Defalcation*

Having found that the state court fully and finally decided that a $190,000 judgment plus prejudgment interest and costs should be entered against the Debtor by reason of her conduct as trustee of the Trust, the only remaining question is whether the state court's findings regarding the Debtor's wrongdoing support a finding of defalcation as a matter of law. For the reasons set forth herein, this Court finds that the state court judgment and related

findings are sufficient, as a matter of law, to support entry of summary judgment in favor of the Plaintiffs.

In defining defalcation, the Supreme Court has held that "an intentional wrong" is required. *Bullock*, 569 U.S. at 273. The Court included "as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." *Id.* at 273-74. Relying on the Model Penal Code, the Court explained that if "actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* at 274 (citations omitted).

When considering whether a fiduciary knew of the substantial risk that her conduct would violate a duty, a court may resolve that question of fact by drawing the conclusion that the risk was known if the risk was obvious. *Jahrling*, 816 F.3d at 927 (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). When the risk is obvious, proceeding despite the risk is reckless and may amount to a gross deviation from expected standards and support a finding of defalcation. *Id.* Defalcation requires more than negligence but does not require willfulness; intentional wrongdoing may be established by proof of recklessness. *Id.* at 926 n.1.

The final state court order included specific findings that the Debtor failed to provide an "adequate accounting" of the funds she received and the expenses she claimed to have paid for the benefit of the Plaintiffs. The order

also contained specific findings that the Debtor commingled the Trust funds by placing the funds into an account owned by herself and her husband and that the Debtor "illegally converted" the funds of the Trust and "used said funds improperly for her own benefit." These findings were necessary to the final resolution of the case, and the Debtor fully participated in the litigation. Importantly, the issues resolved by these state court findings are identical to the issues raised by the complaint here. The findings establish that the Debtor acted in conscious disregard of the rights and interests of the Plaintiffs and her duties as a fiduciary by taking their Trust funds, commingling the funds with her own assets, and keeping no records of her actions. The risk that her conduct would violate her fiduciary duties was obvious; the Debtor makes no claim that she did not understand that the Trust funds were meant for the care of the Plaintiffs. At a minimum, the state court findings allow this Court to draw the inference that the Debtor turned a blind eye to her duties and grossly deviated from the standards required of a trustee. This Court does draw such inferences. The findings by the state court support a finding by this Court that the debt owed by the Debtor to the Plaintiffs arose through the Debtor's defalcation. *Bullock*, 569 U.S. at 273-74; *Jahrling*, 816 F.3d at 927.

In her response to the motion for summary judgment, the Debtor admits that the evidence presented by the Plaintiffs in the state court litigation "made it abundantly clear that she had commingled the trust money with her own and could not satisfactorily account for how it was spent." She also admits that "[h]er failure as a fiduciary was in not keeping records and properly accounting

for the money[.]" She does not dispute that her failure to keep records and to account to the Plaintiffs violated Illinois law. 760 ILCS 5/11(a) (repealed 2020)[2]; *Goodpasteur v. Fried*, 183 Ill. App. 3d 491, 493-95 (1989). The Debtor claims, however, that the state court evidence and her admitted violation of state law support only a finding of negligence and not intentional or reckless conduct. She is wrong.

As set forth above, the Debtor's conduct established a conscious disregard and, at a minimum, willful blindness to her duties as trustee. She says in her response that a layperson without legal guidance might not know the exact requirements of state law regarding a trustee's fiduciary duties. But not knowing the precise, formal requirements of the law cannot justify a trustee putting all the trust money into her own accounts, commingling the trust funds with her own assets, and having no records to provide an accounting. Further, although the Debtor speculates about what a layperson might or might not know, she never actually says that she did not know that the Trust funds were to be used by her for the benefit of the Plaintiffs or that she had a duty to keep records. Under the circumstances admitted by the Debtor—the money is gone and no accounting has been or can be made—an actual intent to misappropriate the funds may be inferred. *Kontos v. Manevska (In re Manevska)*, 587 B.R. 517, 533 (Bankr. N.D. Ill. 2018). Here, however, the Court need not infer actual intent by the Debtor to misappropriate the funds;

---

[2] Although in effect at all relevant times throughout the state court proceedings, the Illinois Trusts and Trustees Act (760 ILCS 5/1 *et seq.*) was repealed in January 2020 and has been superseded by the Illinois Trust Code (760 ILCS 3/101 *et seq.*). For the Debtor's purposes, her failure to account to the Plaintiffs would have fared no better under the new statute. *See* 760 ILCS 3/813.2(b).

as set forth above, an inference of recklessness is properly drawn and is sufficient to sustain a finding of defalcation.

In an effort to avoid the entry of summary judgment, the Debtor claims that the state court's final order is ambiguous. To the contrary, the order is clear, concise, and to the point; the Debtor makes no credible case otherwise. She says that the state court did not clearly spell out that her debt to the Plaintiffs is nondischargeable. But, of course, this Court has exclusive jurisdiction to make that determination; the nondischargeability of the Debtor's obligation was not before the state court. 11 U.S.C. §523(c). For collateral estoppel to apply, the factual issues that were tried in the state court must be the same factual issues that are before this Court. *Gambino*, 757 F.3d at 608. The relief requested and awarded in the state court was dependent upon proof of the Debtor's breach of her fiduciary duties by her commingling of the Trust funds, her treating the funds as her own, and her failure to account for her use of the funds. Those exact same issues are before this Court, and the findings made in the final state court order support a finding of defalcation here.

The Debtor also attempts to avoid the entry of judgment against her by reciting in her response portions of her testimony before the state court about expenditures she says she made on behalf of the Plaintiffs. The Plaintiffs correctly point out in their reply, however, that the Debtor's testimony was largely discounted by the state court because her claims of expenditures were not supported by canceled checks, receipts, or other documentation. Further, the state court specifically questioned the credibility of some of the Debtor's

claimed expenditures, finding that the same expenditures were documented by the executor as having been paid directly by the estate. In entering judgment against the Debtor, the state court relied on her admission that her so-called accounting consisted of "guesses or estimates." In considering the documents she presented as accountings, the state court found that there was "not a single verifiable . . . expense . . . contained" in the documents. The state court characterized her attempt to use USDA expense guidelines in lieu of documenting actual expenditures to be "without merit."[3]

Likewise, the Debtor's assertions regarding whether Trust funds were used to purchase a new home titled in her and her husband's name are confusing and unhelpful to her case. She admits in her response that she had testified and included in her documents filed in state court, a charge of $108,000 against the Trust funds for interest paid on her home mortgage. Later in the response, however, she claims that none of the Trust funds were used to purchase the home. She points out that the state court said, in rendering the final decision, that it could not be determined how much of the Trust funds had been used for the home purchase. Although the Debtor seems to suggest that the state court's comments were favorable to her in that regard, they were not. The state court went on to question whether interest charges could be parsed out as the Debtor claimed and specifically found that, if Trust

---

[3] The Debtor also overlooks the fact that she failed to account not only for the Trust funds but also for the Social Security benefits she received. Again, she was ordered by the state court to account for all finances under her control. Recalling a few isolated expenditures, even if she had receipts for those expenditures, would not have supported charging the expenditures against the Trust funds when, by her own admission, over $150,000 was also available to pay the Plaintiffs' expenses. Without a proper accounting, there would be no way to determine which funds were used for what purposes. Likewise, recalling a few expenditures now does not provide any defense to her in this proceeding. And, in any event, the time to account for her use of the funds has long since passed.

funds were used for house payments, then the Plaintiffs should have received an equity interest in the home.

None of the issues raised in the Debtor's response establish that a material issue of fact is in dispute. She admits that she commingled the Trust funds with her own assets and cannot account for her use of the funds. She claims only that the Plaintiffs have not established her willful intent while ignoring the law that allows this Court to draw an inference of recklessness based on her admitted conduct. The state court's final order and the specific findings made by the state court when the decision was announced clearly support a finding of defalcation by the Debtor in her role as a fiduciary to the Plaintiffs.

## IV.    Conclusion

The Plaintiffs have met their burden of proof. The collateral estoppel effect of the final state court order and the specific findings made when the state court announced its decision support all required elements of proof necessary to except the debt at issue from the Debtor's discharge. Without question, the Debtor's debt owed to the Plaintiffs in the amount of $190,000 plus prejudgment interest and costs arose from her defalcation while acting in a fiduciary capacity.

Judgment will be entered in favor of the Plaintiffs on Count I of their complaint, which relied on collateral estoppel to establish the elements of the cause of action. Count II of the complaint, pleaded as an alternative if collateral

estoppel was determined not to support all required elements, will be dismissed as moot. The Debtor's cross-motion for summary judgment will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###